UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| BOBBY D. WILLIAMS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BOBBIE J. STITT, SCOTT I. GRIFFIN, and SCOTT I. BASSIN,<br><br>　　　　Defendants.<br>_____/ | No. C 14-00760 LB<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEYS FEES AND COSTS**<br><br>[Re: ECF No. 30] |

**INTRODUCTION**

For this motion, the court must decide whether attorney Scott Bassin, who used to be a defendant to this action, is entitled to attorney's fees and costs pursuant to California Code of Civil Procedure § 425.16, which is California's "anti-SLAPP" statute. Motion to Dismiss and to Strike, ECF No. 30.[1]  Pursuant to Civil Local Rule 7-1(b), the court found this matter suitable for determination without oral argument and vacated the June 18, 2014 hearing.  6/16/2014 Clerk's Notice, ECF No. 40.  Upon consideration of the record, the arguments of counsel, and the applicable authority, the court **DENIES** Mr. Bassin's motion because he has not met his burden to show that the challenged

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

cause of action is one arising from a protected activity under § 425.16.

**STATEMENT**

**I. THE TRUST**

Gomez Williams was born in February 1911. *See* Original Complaint, ECF No. 1 ¶ 9. His son and only child, Bobby Williams ("Mr. Williams"), was born in August 1931. *Id.* ¶ 8

In December 1999, Gomez Williams executed a Will (the "1999 Will"), which left all of his estate to Mr. Williams. *Id.* ¶ 13. In July 2002, at the age of 91, Gomez Williams declared his Last Will and Testament (the "2002 Last Will") and revoked the 1999 Will. *Id.* ¶ 14. Under the 2002 Last Will, Gomez Williams gave all of his estate to the Trustee of The Gomez Revocable Trust ("the Trust") of which Gomez Williams was both the Settlor and Trustee. *Id.* ¶ 14. Under a July 2002 Declaration of Trust, Gomez Williams distributed all of the Trust's property (except for an automobile) to Mr. Williams. *Id.* ¶¶ 15-16.

In September 2006, at the age of 95, Gomez Williams amended the distribution provisions of the Trust and gave all of his estate to Bobbie Stitt ("Ms. Stitt"). *Id.* ¶ 17. Ms. Stitt was employed by Gomez Williams to provide in-home care, which included cooking, cleaning, and driving him to appointments, meetings, and shopping. *Id.* ¶ 12. Mr. Williams alleges that Ms. Stitt procured the amendment through intentional and undue influence over Gomez Williams and caused Mr. Williams to lose his inheritance from his father. *Id.* ¶ 18. Gomez Williams died on January 11, 2010. *Id.* ¶ 9.

**II. MR. BASSIN'S ADMINISTRATION OF THE TRUST**

On February 16, 2010, Ms. Stitt visited Mr. Bassin's law office and brought with her the documents related to the Trust. Bassin Anti-SLAPP Decl., ECF No. 11-4, ¶ 3. Ms. Stitt requested Mr. Bassin's assistance in the administration of the Trust. *Id.* Mr. Bassin agreed to do so, and he and Ms. Stitt entered into an attorney-client relationship. *Id.* Upon reviewing of the Trust documents that same day, Mr. Bassin determined that Ms. Stitt was the successor trustee to the Trust and had the apparent authority to administer it. *Id.* ¶ 4. He also determined that Gomez Williams had caused all of his estate to be distributed to Ms. Stitt. *Id.* ¶ 5. Mr. Bassin also prepared and mailed to Mr. Williams a statutory notice of trust administration pursuant to California Probate Code § 16061.7, which included copies of the Trust documents. *Id.* ¶ 6.

After several months of not hearing from either Mr. Williams or anyone on his behalf, and at Mr. Stitt's request, Mr. Bassin prepared a Trust Transfer Deed (dated September 16, 2010) to Ms. Stitt for the Trust property at 2932 Ingalls St. in San Francisco (the "Ingalls St. Property"). *Id.* ¶ 7.

Over two years passed from the date Mr. Bassin sent the § 16061.7 Notice to Mr. Williams (February 16, 2010) to the date Ms. Stitt contacted Mr. Bassin and told him that she had received a letter dated April 1, 2012 from attorney R.J. Alexander ("Ms. Alexander"). *Id.* ¶ 8. In her letter, Ms. Alexander said that she was administering the Estate of Gomez Williams for property located in Texas. *Id.* On April 16, 2012, Mr. Bassin replied to Ms. Alexander, stating that to his knowledge, all of Gomez Williams's property was disposed of through the Trust, of which Ms. Stitt was the sole beneficiary. *Id.* ¶ 9. Mr. Bassin also enclosed copies of the same § 16061.7 Notice and Trust documents that he sent to Mr. Williams over two years earlier. *Id.*

Later in 2012, Mr. Bassin learned that Ms. Stitt had put the Ingalls St. Property on the market for sale, and escrow was set to close in January 2013. *Id.* ¶ 10. On December 17, 2012, Mr. Bassin emailed a copy of the § 16061.7 Notice and Trust documents to David Banker, the escrow officer for the sale of the Ingalls St. Property. *Id.* ¶ 11. Mr. Banker inquired whether any objections had been made to the § 16061.7 Notice, and Mr. Bassin replied on December 20, 2012 that he had received none. *Id.* ¶ 12. Mr. Banker asked Mr. Bassin to contact Ms. Alexander again to see if she was aware of any objections to the sale of the Ingalls St. Property. *Id.* ¶ 13. In response to this request, Mr. Bassin emailed Ms. Alexander on December 30, 2012, and again on December 31, 2012, asking if she was aware of any objections to the administration of the Gomez Williams Trust. *Id.* ¶ 13. Ms. Alexander responded to Mr. Bassin's email but she never raised any objections to the closing of escrow or to the administration of the Trust. *Id.* ¶ 14.

Mr. Bassin's representation of Ms. Stitt in the administration of the Trust was his sole connection with Mr. Williams, and he never had any dealings or communications with Ms. Stitt before February 16, 2010. *Id.* ¶ 15. Every action he took or communication he made with respect to the administration of the Trust was within his capacity as Ms. Stitt's attorney and was directly and solely related to his legal representation of her. *Id.* ¶¶ 15-17. Mr. Bassin never met Gomez Williams and did not draft any of the documents relating to Gomez Williams's 2002 Will, 2006 Last

No. C 14-00760 LB
ORDER

3

Will, or the Trust. *Id.* ¶ 18.

## III. THE INSTANT LAWSUIT AND MR. BASSIN'S ANTI-SLAPP MOTION

On February 19, 2014, Mr. Williams filed his Original Complaint in this court. *See* Original Complaint, ECF No. 1. He named Ms. Stitt and Mr. Bassin as defendants. *See id.* He alleged that Mr. Bassin aided and abetted Ms. Stitt in her commission of tortious interference with his expected inheritance and as a result, he suffered damages. *Id.* ¶¶ 25-36. More specifically, he alleged that Mr. Bassin "gave substantial assistance to [Ms.] Stitt in the commission of her interference with [his] expectancy and in the abuse of Gomez Williams"; "counseled [Ms.] Stitt as to the documents needed to deprive [him] of [his] expected inheritance"; "drafted the documents needed to deprive [him] of his expected inheritance"; "placed his seal of approval on the documents that he had drafted and which were used to deprive [Mr. Williams] of [Mr. Williams's] expected inheritance"; "facilitated and encouraged the execution of the documents by [] Gomez Williams"; "provided his status as a lawyer to facilitate [Ms.] Stitt's interference with [his] expected inheritance"; "knew" or "should have known" "that [Ms.] Stitt was committing a tortious interference with [his] expected inheritance" and "that [Ms.] Stitt's actions were presumptively fraudulent." *Id.* ¶¶ 26-31, 33-36. He also alleged that Ms. Stitt "would not have been able to accomplish her tortious interference with [his] inheritance without [Mr. Bassin's] assistance." *Id.* ¶ 32.

On March 13, 2014, Mr. Bassin received Mr. Williams's Original Complaint and wrote to Mr. Williams's attorneys for this action, William Herren (Mr. Williams's primary attorney who is in Texas) and Robert Begley (local counsel). Bassin Fees Decl., ECF No. 30-2, ¶ 3. Mr. Bassin told them that Mr. Williams's claim against him was without merit and that he intended to seek recovery of the attorney's fees he incurs in defending against it. *Id.* He also told them explicitly that the only legal services he provided to Ms. Stitt were in connection with the administration of the Trust and that he had never met Ms. Stitt before February 2010. *Id.* That same day, Mr. Begley called Mr. Bassin and informed him that he would get whatever evidence there might be from Mr. Herren about Mr. Bassin's involvement. *Id.* ¶ 4.

Not having heard anything from either attorney, Mr. Bassin sent them a follow-up letter on March 17, 2014, reiterating his earlier statements. *Id.* ¶ 5. That day, Mr. Begley notified Mr. Bassin

1  that he would withdraw as local counsel if there continued to be a lack of evidence of Mr. Bassin's
2  involvement in alleged tort. *Id.* ¶ 6.  The next day, Mr. Begley emailed Mr. Bassin and told him that
3  Mr. Herren refused to dismiss him from the action and that he (Mr. Begley) would be substituting
4  out as Mr. Williams's local counsel. *Id.* ¶ 7.  After learning this, Mr. Bassin tendered the claim to
5  his malpractice insurance carrier and retained defense counsel, thereby incurring attorney's fees and
6  costs. *Id.* ¶ 8.

7  On March 24, 2014, Mr. Bassin's defense counsel (Allen Kuo) wrote to Mr. Begley and Mr.
8  Herren and told them that Mr. Williams's claim against Mr. Bassin was meritless and subject to
9  California's anti-SLAPP statute and requested that Mr. Bassin be dismissed from the case.  Kuo
10 Decl., ECF No. 30-5, ¶ 7.  Neither Mr. Begley nor Mr. Herren responded to Mr. Kuo's
11 communication. *Id.* ¶ 8.

12 On March 31, 2014, Mr. Bassin filed a motion asking the court to dismiss Mr. Williams's claim
13 against him and to strike the Original Complaint pursuant to California's anti-SLAPP statute.
14 Motion to Dismiss and to Strike, ECF No. 11.  Rather than opposing the motion, Mr. Williams filed
15 a First Amended Complaint that dropped Mr. Bassin as a defendant to the action.  *See* First
16 Amended Complaint ("FAC"), ECF No. 15.  The court then issued an order denying Mr. Bassin's
17 motion as moot.  *See* 4/21/2014 Order, ECF No. 16.

### IV. MR. BASSIN'S MOTION FOR ATTORNEY'S FEES

19 On May 14, 2014, Mr. Bassin filed a motion to recover $14,520 in attorney's fees that he says he
20 incurred in relation to his anti-SLAPP motion.  *See* Motion for Attorney's Fees, ECF 30.  Mr.
21 Williams opposed the motion on May 19, 2014, and Mr. Bassin filed a reply in support of the motion
22 on May 21, 2014.  *See* Opposition, ECF No. 32; Reply, ECF No. 34.[2]

## ANALYSIS

### I. LEGAL STANDARD

25 California Code of Civil Procedure § 425.16 is called the anti-SLAPP statute because it allows a

---

[2] Mr. Williams also filed a motion for leave to file a sur-reply, *see* Sur-Reply Motion, ECF No. 35, but given the court's ruling the court finds that a sur-reply is not necessary and denies Mr. Williams's motion.

No. C 14-00760 LB
ORDER

5

defendant to gain early dismissal of causes of action that are designed primarily to chill the exercise of First Amendment rights. *See Siam v. Kizilbash*, 130 Cal. App. 4th 1563, 1568 (Cal. Ct. App. 2005). § 425.16(b)(1) provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that there is a probability that the plaintiff will prevail on the claim.

And § 425.16(e) provides that acts "in furtherance of" these rights include:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;
>
> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;
>
> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or
>
> (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

California's anti-SLAPP statute applies to state claims in federal court. *See Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005). In ruling on an anti-SLAPP motion, the trial court engages in a two-step process. *See Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (Cal. 2002). First, the court decides whether the defendant has made a threshold showing that the challenged cause of action arises from acts in furtherance of the defendant's right of petition or free speech under the United States or California constitutions in connection with a public issue. *Id.* Second, "[i]f the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.* The claim is subject to dismissal only when the defendant shows that the claim is based on protected conduct and the plaintiff fails to show a probability of success on that claim. *See Navellier v. Sletten*, 29 Cal. 4th 82, 88-89 (Cal. 2002).

For the first part of the test, a defendant needs only to make a prima facie showing that the claim "arises from" its conduct "in furtherance of" its exercise of free speech or petition rights as defined in § 425.16(e). *See Equilon*, 29 Cal. 4th at 61. "For purposes of the anti-SLAPP statute, a cause of

action 'arises from' conduct that it is 'based on.'" *Graham-Suit v. Clainos*, --- F.3d ----, 2014 WL 444153, at *4 (9th Cir. 2013) (citing *Copenbarger v. Morris Cerullo World Evangelism*, 215 Cal. App. 4th 1237, 1244-45 (Cal. Ct. App. 2013)). Thus, a court must ask what activities form the basis for each of a plaintiff's causes of action. *Id.* The court then must ask whether those activities are "protected" and thereby bring the cause of action within the scope of the anti-SLAPP statute. *Id.* (citing *Wallace v. McCubbin*, 196 Cal. App. 4th 1169, 1182-84 (Cal. Ct. App. 2011)).

For the second part of the test, the burden then shifts to the plaintiff to establish as a matter of law that no such protection exists. *See Governor Gray Davis Comm. v. Am. Taxpayers Alliance*, 102 Cal. App. 4th 449, 456 (Cal. Ct. App. 2002). To establish a probability of prevailing, a plaintiff must demonstrate that the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. *See Premier Med. Mgmt. Systems, Inc. v. California Ins. Guar. Ass'n*, 136 Cal. App. 4th 464, 476 (Cal. Ct. App. 2006). The plaintiff also must present evidence to overcome any privilege or defense to the claim that has been raised. *See Flatley v. Mauro*, 39 Cal. 4th 299, 323 (Cal. 2006).

In any action subject to the anti-SLAPP statute, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Code Civ. P. § 425.16(c); *see Verizon Delaware v. Covad Comms.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

If a plaintiff voluntarily dismisses the action after a defendant files a special motion to strike, the court cannot rule on the motion, *Law Offices of Andrew L. Ellis v. Yang*, 178 Cal. 4th 869, 878-879 (Cal. 2009), but the court nonetheless "has limited discretion to determine the merits of the defendant's anti-SLAPP motion and whether the defendant is the prevailing party for purposes of attorney's fees and costs under § 425.16(c)," *Coltrain v. Shewalter*, 66 Cal. App. 4th 94, 107 (Cal. Ct. App. 1998). *See Pandora Jewelry, LLC v. Bello Paradiso*, LLC, CIV S–08–3108LKK/DAD, 2009 WL 1953468, at *3 (E.D. Cal. July 1, 2009) ("California courts of appeal agree that when a claim is dismissed after an anti-SLAPP motion is filed but before the motion is heard, the movant will sometimes, but not always, have 'prevailed' within the meaning of the statute, such that fee shifting is appropriate.") (citations omitted). Thus, "[a] plaintiff may not avoid liability for attorney fees and costs by voluntarily dismissing a cause of action to which an anti-SLAPP motion is

directed." *ARP Pharmacy Servs., Inc. v. Gallagher Bassett Servs., Inc.*, 138 Cal. App. 4th 1307, 1323 (Cal. Ct. App. 2006). Similarly, "a plaintiff cannot amend a pleading to avoid a pending anti-SLAPP motion." *ARP Pharmacy Servs.*, 138 Cal. App. 4th at 1323; *see also Sylmar Air Conditioning v. Pueblo Contracting Servs.*, 122 Cal. App. 4th 1049, 1055 (Cal. Ct. App. 2004) (rejecting plaintiff's argument that "an amendment of the complaint is qualitatively different than dismissal of the complaint and therefore it should not be treated similarly").

## II. DISCUSSION

Here, as recounted above, Mr. Williams abandoned his claim against Mr. Bassin (by filing a First Amended Complaint that did not name him as a defendant) after Mr. Bassin filed an anti-SLAPP motion. Thus, while the court does not need to rule on Mr. Bassin's anti-SLAPP motion, it may consider Mr. Bassin's pending motion for attorney's fees, as allowed by the anti-SLAPP statute.[3]

To do so, pursuant to the two-step outlined by the California Supreme Court in *Equilon Enterprises*, the court must first decide whether Mr. Bassin has made a threshold showing that Mr. Williams's claim against him arose from acts in furtherance of Mr. Bassin's right of petition or free speech under the United States or California constitutions in connection with a public issue. It is clear that Mr. Williams's claim against Mr. Bassin is "based on"—and therefore "arose from"—Mr. Bassin's assistance in the administration of the Trust, namely, his review of the Trust documents, his

---

[3] In his opposition, Mr. Williams appears to argue that Mr. Bassin's motion fails because California's anti-SLAPP statute conflicts with federal procedural law. To the extent that this is his argument, it fails. While a an anti-SLAPP motion under § 425.16 does not apply to federal claims in federal court, *see Hopscotch Adoptions, Inc. v. Kachadurian*, No. CV F 09–2101 LJO MJS, 2011 WL 587357, at *4 (E.D. Cal. Feb. 9, 2011); *Bulletin Displays, LLC v. Regency Outdoor Adver.*, 448 F. Supp. 2d at 1172, 1182 (C.D. Cal. 2006), the anti-SLAPP statute does apply to "state law claims that federal courts hear pursuant to their diversity jurisdiction," *Hilton v. Hallmark Cards*, 599 F.3d 894, 900-01 (9th Cir. 2010). Indeed, the Ninth Circuit has determined that § 425.16 applies in federal courts in the absence of "direct collusion" between the state enactment and the Federal Rules of Civil Procedure 8, 12, and 56. *See Makaeff v. Trump Univ., LLC*, 11–55016, 736 F.3d 1180, 1181-84 (9th Cir. 2013); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972-73 (9th Cir.1999). While California's "[a]nti-SLAPP statute and the Federal Rules do, in some respects, serve similar purposes, namely the expeditious weeding out of meritless claims before trial. . . . there is no indication that Rules 8, 12, and 56 were intended to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless claims." *Newsham*, 190 F.3d at 972.

No. C 14-00760 LB
ORDER

drafting and mailing of the § 16061.7 Notice, his preparation of a Trust Transfer Deed for the Ingalls St. Property, and his communications with other individuals regarding the Trust.

The court next must determine if Mr. Bassin's acts are "protected" and thereby bring Mr. Williams's claim within the scope of the anti-SLAPP statute. In his motion for attorney's fees, Mr. Bassin does not address this issue. *See generally* Motion for Attorney's Fees, ECF No. 30-1. Instead, it assumes that Mr. Bassin's acts are "protected" and focuses on whether Mr. Bassin is a prevailing defendant due to Mr. Williams's abandonment of his claim. *See generally id.* Such an assumption is improper, however, as § 425.16(c) allows a prevailing defendant to recover attorney's fees and costs only "in any action subject to" the anti-SLAPP statute.

Mr. Bassin did argue in his anti-SLAPP motion that his acts are "protected" under § 425.16(e)(1) and/or (e)(2). *See* Motion to Dismiss and to Strike, ECF No. 11-1 at 21-22.[4] As stated above, §

---

[4] Mr. Bassin also cites a few judicial opinions in support of his argument that the anti-SLAPP statute applies here, but the court does not believe they go as far as, or say what, he says they do. He cites *Briggs v. Eden Council for Hope and Opportunity*, 19 Cal. 4th 1106, 1120-23 (1999), for his statement that "[t]he California Supreme Court has held that the anti-SLAPP law protects parties to a lawsuit against whom claims have been for representational misconduct," Motion to Dismiss and to Strike, ECF No. 11-1 at 21, but *Briggs* says nothing about "representational misconduct" generally and instead held that under § 425.16(e)(1) and (e)(2), "a defendant moving to strike a cause of action arising from a statement made before, or in connection with an issue under consideration by, a legally authorized official proceeding need not separately demonstrate that the statement concerned an issue of public importance," *Briggs*, 19 Cal. 4th at 1123. He also cites *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 61 (2002), for his statement that § 425.16 "presumptively applies to all alleged misconduct that occurs in connection with a proceeding authorized by law in which the defendants have acted in furtherance of their rights to petition," Motion to Dismiss and to Strike, ECF No. 11-1 at 22, but that opinion says nothing like that and in fact only mentions a presumption when discussing the standard two-prong test for determining whether the anti-SLAPP statute applies to a particular claim, *Equilon Enters.*, 29 Cal. 4th at 61 (quoting *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 307 (Cal. Ct. App. 2001)). Finally, Mr. Bassin cites *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2006), for his statement that § 425.16 "unequivocally protects communicative conduct 'committed by attorneys in representing clients.'" Motion to Dismiss and to Strike, ECF No. 11-1 at 22 (quoting *Rusheen*, 37 Cal. 4th at 1056). But what *Rusheen* actually says is much narrower. *Rusheen* states: "Under Code of Civil Procedure section 425.16 '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . shall be subject to a special motion to strike . . . .' 'A cause of action "arising from" defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike.' 'Any act' includes communicative conduct such as the filing,

1  425.16(e)(1) provides that an act triggering the anti-SLAPP statute may be "any written or oral
2  statement or writing <u>made before a legislative, executive, or judicial proceeding, or any other official</u>
3  <u>proceeding authorized by law</u>," and § 425.16(e)(2) provides that such an act may be "any written or
4  oral statement or writing <u>made in connection with an issue under consideration or review by a</u>
5  <u>legislative, executive, or judicial body, or any other official proceeding authorized by law</u>."
6  (Emphasis added.)  Mr. Bassin then emphasizes that he took only acts to administer the Trust on Ms.
7  Stitt's behalf and argues that these acts "quite obviously constitute[] "written or oral statement[s] or
8  writing[s] made in connection with an issue under consideration or review before a legislative,
9  executive, or judicial proceeding, or any other official proceeding authorized by law' under §
10 425.16(e)(2).  Motion to Dismiss and to Strike, ECF No. 11-1 at 22.

11     The problem is that it is not as obvious as Mr. Bassin would like it to be.  As for § 425.16(e)(1),
12 none of Mr. Bassin's statements or writings were "made before a legislative, executive, or judicial
13 proceeding, or any other official proceeding authorized by law," as no probate proceedings had been
14 commenced in any court or other forum, so that provision does not support his cause.  Nor does it
15 appear that any of his statements or writings were "made in connection with an issue under
16 consideration or review by a legislative, executive, or judicial body, or any other official proceeding
17 authorized by law," so it does not appear that § 425.16(e)(2) supports his cause, either.

18    Mr. Bassin cites no authority that supports his position that the mere administration of a
19 trust—outside of the context of probate proceedings in a court—falls within § 425.16(e)(2), and the
20 opinions that the court found on its own support a finding that Mr. Bassin's acts are not protected
21 under § 425.16(e)(2).  Under that provision, Mr. Bassin's acts must have been "made *in connection*
22 *with* an issue under consideration or review by a legislative, executive, or judicial body, or any other
23 official proceeding authorized by law."  As one California court has made clear, for purposes of this
24 provision, "although litigation may not have commenced, if a statement 'concern[s] the subject of
25 the dispute' and is made 'in anticipation of litigation contemplated in good faith and under serious

---

27 funding, and prosecution of a civil action.  This includes <u>qualifying acts</u> committed by attorneys in
28 representing clients <u>in litigation</u>."  *Rusheen*, 37 Cal. 4th at 1056 (internal citations omitted)
    (emphasis added).

No. C 14-00760 LB
ORDER
10

consideration,' then the statement may be petitioning activity protected by [§] 425.16." *Neville v. Chudacoff*, 160 Cal. App. 4th 1255 (Cal. Ct. App. 2008) (quoting *Rohde v. Wolf*, 154 Cal. App. 4th 28, 36 (Cal. Ct. App. 2007)) (internal citation and quotation marks omitted); *see also Sansoe v. Ford Motor Co.*, No. C 13-5043 PJH, 2014 WL 2215914, at *3 (N.D. Cal. May 29, 2014) (noting that California courts limit the coverage of § 425.16(e)(2) to prelitigation communications that relate to litigation that is contemplated in good faith and under serious consideration); *Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*, No. C 11-2243 CW, 2012 WL 3877783, at *11 (N.D. Cal. Sept. 6, 2012) (same).

In addition, one California court has held that an attorney's acts related to the probate of a client's estate were not protected under § 425.16(e)(2). In *Moore v. Shaw*, the attorney defendant had drafted an agreement for the-then trustee of a trust. 116 Cal. App. 4th 182, 188 (Cal. Ct. App. 2004). That agreement effectively eliminated the status of the prior successor trustee of the trust. *Id.* The prior successor trustee sued the attorney for negligent and intentional breach of trust, and the attorney filed an anti-SLAPP motion, asserting that her actions arose from her conduct in representing her clients and in "their exercise of the constitutional rights of freedom of speech and petition for redress of grievances in the context of the probate of" the estates of two decedents. *Id.* at 190. The court rejected the attorney's argument. *Id.* at 196-97. It stated that the attorney's drafting of the termination agreement and participation in the probate of the trust property was not "an act in furtherance of the right of petition or free speech" and did not "arise from protected activity" because her acts occurred "well before the inception of any judicial proceedings." *Id.* at 197.[5]

---

[5] It could be argued that one California opinion supports Mr. Bassin's argument. In *Cabral v. Martins*, the court observed that the anti-SLAPP statute protects "all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding," including communications preparatory to a judicial proceeding when "intimately intertwined with" it. 177 Cal. App. 4th 471, 482 (Cal. Ct. App. 2009). Accordingly, the court concluded the attorney defendant's revision of a will some months before the testator died was protected conduct because the revised will would eventually and inevitably be filed with a probate court for implementation. *Id.* at 482-483. The *Cabral* court, however, did not discuss *Moore* (even though Moore was decided five years earlier) or any of the other opinions holding that acts qualifying under § 42.16(e)(2) must have been made "in anticipation of litigation contemplated in good faith and under serious consideration." For this reason, the court finds *Cabral* insufficient to support Mr. Bassin's motion.

No. C 14-00760 LB
ORDER

11

Likewise, in this case, Mr. Bassin's acts were not made in connection to any probate proceedings that were pending or were to be instituted at any time soon. Nor was there any known dispute regarding the Trust or any anticipated litigation that was contemplated in good faith and under serious consideration. In fact, after Mr. Bassin drafted and mailed the § 16061.7 Notice, it was not until years later that he became aware of even the possibility of a potential dispute regarding the Trust. Put simply, there were no probate proceedings going on when Mr. Bassin administered the Trust, and there also was no dispute regarding the Trust, either. In this context, the court does not find that Mr. Bassin's acts were "made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law" and therefore are not protected under § 425.16(e)(2). This also means that Mr. Williams's claim against Mr. Bassin is not within the scope of the anti-SLAPP statute. Accordingly, the court finds that under § 425.16(c) Mr. Bassin cannot recover the attorney's fees he incurred in relation to his anti-SLAPP motion. His motion for attorney's fees therefore is denied.

## CONCLUSION

For the reasons explained above, the court **DENIES** Mr. Bassin's motion for attorney's fees. This disposes of ECF No. 30.

**IT IS SO ORDERED.**

Dated: July 14, 2014

_____
LAUREL BEELER
United States Magistrate Judge

No. C 14-00760 LB
ORDER

12